Case number 24-1881, Gun Owners of America Inc. et al. versus DOJ et al. Oral argument, 15 minutes per side. Mr. Olson for the appellants. Good morning, Mr. Olson, and welcome to Sixth Circuit virtually. You can get started when you're ready. Sure. Well, Rob Olson on behalf of the plaintiff appellants. Since this case has been before the court once before, I'd like to use the majority of my time addressing the 11th hour claim that the case has somehow been rendered moot. Just a few months ago, after five years of litigation, ATF unilaterally replaced the 2020 Public Safety Advisory that was the subject of plaintiff's claims. Whereas that advisory had claimed that Michigan concealed pistol licenses or CPLs did not allow their holders to avoid FBI background checks when firearms. ATF's new 2025 letter now takes the position that plaintiffs were right all along and the Michigan CPLs again qualify. What's your key point? Is your key point that they're going to suddenly change their position again? Or maybe we should start with, do you agree that your clients can get a license now with the new order? Well, my client has had a license for a number of interfering with your rights today. Today, there is not, your honor. Okay. So is your key point that if the first administration did one thing, the second another, they could easily revert? Is that the key thing we should focus on? That this case represents voluntary cessation of the challenged action, which is an exception to mootness. You mentioned that a prior administration, it was actually this very president. That's what I meant. That's what I meant. But so, I mean, in other words, this president has flip-flopped on this issue now twice. And I think, I mean, it's highly likely that the president could flip-flop again, or even more likely the subsequent administration could. Now, ATF- This change of administration policy wasn't occasioned by this lawsuit, which is something we usually look to, right? You don't think it was this lawsuit that caused the administration to change its mind? Well, I don't know, your honor, what it is. The ATF's brief, the government's brief here just three times is the only time that it mentions anything. And it says that they were incorrect and that they now agree that the Michigan permit qualifies. They don't say why they were incorrect. They don't explain whether they agree with our legal position. They don't explain whether if the Michigan state police were to take some other action in the future that they disagreed with, that they wouldn't- Well, I don't think that's quite true. They said that the reason this was changed was they were doing an across-the-board review of their regs to make sure they complied with the second amendment. That had nothing to do directly with your case. In fact, you had most recently won. So it'd be very strange that they were running from a case in which they'd won. So I guess I'm just, I don't think it's fair to say you have no idea why they did this. I thought they said, do a review of all of our regs to make sure they comply with the second amendment. Well, that they did a review, your honor. And it was at the president's order, but the president never, that executive order does not say go and look at Brady alternate states or anything. It just says, take actions that are consistent with the second amendment. So it was ATF that took it upon itself to review this particular thing and to take this particular action. There was no instruction from above that they do this. And if you look, there are two cases that I think provide real impediments to the ATF's position in this case. One is the speech first, the Schlissel case, which is this circuit's 2019 opinion. And the other one is FBI v. FICRI, which is the Supreme court's 2024 opinion. Both of them have very similar fact patterns, I think, to what we're dealing with here. And both opinions sort of seem like they were written almost to account for what's going on here. Well, you have to, on speech first, you got to come to grips with two things. And that one, the change happened soon after the lawsuit. This is long after the lawsuit and with very little causative effect. And in that case, they were still defending their position. Here, they're not defending their position and it's five years later. And after a generic review of all regulations to make sure they comply with the second amendment, those are pretty serious differences. Well, your honor, they're not defending it, but at the same time, they're not defending it. I know that's a double negative, but they're not disclaiming it. They're not walking away from it. They're not explaining why the current one is right, why the former one is wrong. They don't get into anything. They don't even say whether they agree with this court's prior decision and prior opinion in the case. So I don't know precisely what ATF's position is. And I don't think the court does either. And if the state police, again, were to do something else, would Michigan CPL holders just find themselves back on the receiving end of having their permits revoked as Brady alternates? I don't think we have any idea. And I don't think that's in the record yet. And in speech first, the government keys in on this language that the government gets more solicitude in cases of mootness. And that's really helpful language if you don't read anything else that this court said in that opinion. But the court then went on to explain what it meant. And it says, not all action enjoys the same degree of solicitude. So there's a spectrum. And so on one end of the spectrum, they talk about a situation where Congress enacts new legislation. The president signs it into law. You get a lot of solicitude. You've got two co-equal branches of government. We assume they're not pulling our leg, just trying to moot a case. And then somewhere in the middle of the spectrum, there's like formal rulemaking, notice and comment. It takes a lot of time, money. We assume agencies don't do sorts of things like that just to moot cases. But then the court says what it calls ad hoc, discretionary, easily reversible actions. And in situations like that, the government gets no solicitude. The court says either that there is discretion to affect the change lies with one agency or individual, or there's no formal process required to affect the change. And in this case, we don't just- And I think it's a good one that there's a spectrum. And I think your argument is to say they're at the far edge and therefore don't get any solicitude. And I guess I would push back slightly. Why doesn't the reality that this came about because of a government-wide assessment move this from the outer edge, which is where you want to place it? That doesn't seem right to me. I agree with you. It doesn't look like this has to go through notice and comment and so forth. That's a very fair point. But why isn't it a slight counterbalance that this was across-the-board assessment of things as opposed to let's just get out of this lawsuit and jerk them around? Well, it doesn't have to go through any process at all, Your Honor. ATF could simply reverse itself. Okay. You can answer the question or you can ignore the question. You just ignored the question. I was trying to make the point that they didn't just do this in relation to this lawsuit. They did it as an across-the-board assessment of regulations and whether they complied with the Second Amendment. If you want to talk spectrum, that seems like a fair point. It's very helpful to you. Shouldn't that move it a couple notches from the edge of the spectrum or no? I don't think so. I think that one of the factors we look at is why they changed their position. One of the other factors you look at, the more important factor is what they're going to do forward and what they can say about their future conduct. They can't say anything about their future conduct. They say they think that it is unlikely that they will re-offend in the foreseeable future, whatever that is. But the Supreme Court in the Fecree case, they don't look at just the foreseeable future. They look at later at some more precipitous moment in time. I think that's the more important inquiry here is what can they say about what they're going to do in the future? You know, I was trying to answer your Honor's question. I think that's why those factors are so important here. ATF can simply a couple, they call it ATF's new leadership, just a couple of people that were put there. So, I mean, just to be clear, I think you think it's irrelevant that this came about, not because of a reassessment of this order, but because it came about as a reassessment across the board of all regulations that touched on the Second Amendment, whether they were in compliance. I take you to be saying that has no relevance. I would say that's virtually irrelevant, Your Honor. I think that an agency- Virtually irrelevant in a virtual argument. I love it. I think an agency could just point to something like that. It's such a generic order that doesn't bind them to any position. It doesn't order them to take any action. It just says, hey, review some stuff. And you get new leadership that comes in and is just looking across the And I think they would have come to this conclusion knowing some of the people in that leadership, even without that executive order. But I don't think that gets them anywhere because those people could be replaced. This president in three years or in seven years will have another administration. And if those new leadership took a different view of this, there's nothing, there's zero impediment to this just being put right back in effect. Like we say in our brief, it takes five minutes. They could write this on the back of a napkin at the dinner table and scan it in. And it's the law in Michigan. And things like that, where there's absolutely nothing stopping them from reversing. I think that those fact patterns are in both Speech First and FECRE, where they say the Speech First, the University of Michigan they say, who is the one that does this? And they said, well, anyone in the university leadership could reverse this policy. And they say, okay, and what if you just had new officials at some date? And they said, well, we can't say what the new officials would do, but we only know that now for us, we're not going to take these actions again. And that wasn't good enough for this court. And the same thing in FECRE where the gentleman was removed from the terror watch list in an attempt to moot the case. The Ninth Circuit sent it back and then the Supreme Court sent it back a second time, even when they promised not to put them on the watch list based on current information. They said, we don't know what you're going to do in the future. And this guy's presumably going to go to the same mosques, talk to the same imams and do the same sorts of things. And if he does, he's right back on the list. So I'll reserve the rest of my time unless the court has further questions. Thank you, Mr. Olson. We'll hear from the government. Is it Mr. Janda, have I pronounced it correctly? Okay, you got it. You're on mute. Sorry about that. Thank you, Your Honor. And may it please the court, Sean Janda for the federal government. Plaintiffs in this case believe that ATS 2020 guidance was unlawful. ATF agrees with the plaintiffs and has rescinded that guidance and replaced it with new guidance that reflects plaintiffs' understanding that Michigan concealed pistol licenses are valid Section 922 T3 alternatives. By rescinding and replacing the challenge guidance, ATF has given plaintiffs all the relief they could hope for in this case, and this appeal should be dismissed as moot. What do we say about the fact that it was the first Trump administration that did it, it's the second that's reversing, what's to say, still three plus more years to change again? I just don't think there's any plausible basis in the record for thinking that ATF is going to do that, Your Honor. I can tell you, ATF undertook a broad reassessment of its firearms regulations pursuant to the executive order that we cite in our briefs, and came to the conclusion that a number of its previous determinations with respect to Section 922 T3 were incorrect. And I think 12 or 13 different updates were made to different permits. And so I think there's, number one, sort of no plausible argument that ATF's reassessment was related to or driven by any attempt to game this litigation. It was part of a much broader across the board reassessment, both the firearms regulations and of Section 922 T3. How many other regulations changed? Yeah, so I mean, there's, in the 922 T3 space, like I said, I think there were 12 or 13 updates that were made all at the same time. My understanding is there are a number of other areas involving sort of other rules that had previously been issued, where ATF has decided to either sort of acquiesce in court judgments against the rule, or to sort of Were there other states that, like Michigan, that were allegedly non-compliant with the Brady Act rules that you reversed on? Yes, I think there were a total of 12 states and Puerto Rico, where sort of all in the same reassessment, which we cite in our briefs, where ATF determined that a change was warranted in ATF's views about whether the qualified for Section 922 T3. So I think 13 total adjustments were made all at the same time, including the Michigan adjustment here. And so, you know, I can't sort of represent what ATF is going to do forever and ever and ever. But certainly, ATF, you know, not just has rescinded the guidance here, but affirmatively agrees with plaintiffs that the guidance was incorrect, agrees with plaintiffs on the merits that certainly, given the status of state law today, that Michigan concealed pistol license is qualifying as Section 922 T3 alternatives, and has no plans to reassess that conclusion. And so I don't think there's any basis for believing that the conduct the plaintiffs are challenging is going to occur, and certainly not in the foreseeable future, which is what Ohio against U.S. EPA says is really the relevant timeframe for assessing mootness in this context. And then, I mean, sort of secondly, I think even if the court were to think that there were some possibility that, as my friend on the other side said, three years in the future or seven years in the future, ATF were to reassess its views on this question, that just wouldn't present or likely wouldn't present the same controversy that this presents. I think if you look through plaintiff's brief, I mean, so much of plaintiff's brief talks about sort of who knew what, when, and what the state police practices are, and who knew about the state police practices, and all of that would just be entirely different if ATF were to reassess, again, some sort of hypothetical point in the future. And at some hypothetical point in the future, you know, there may well be changes to state law, to federal law. There might be intervening judicial, state judicial decisions. The state statute might change. I mean, any little change in the state statute would sort of force a different inquiry, because any sort of, even a small mismatch between the state and federal statutes would be relevant to the Section 922 T3 inquiry. And so, you know, if ATF were to reassess, again, you know, whether we're talking three years in the future, seven years in the future, at some hypothetical unknown point, the plaintiffs could certainly challenge that then. But A, it would be a different, substantially different legal challenge. And B, I just don't think there's any basis for thinking that ATF is going to do that at any point in the course. Forgive me for not recollecting this. The 13 covered states and territories, did any of those other ones have litigation along the lines of this case? And if so, what's the current status of that litigation? So I'm not sure, Your Honor. I think there was a challenge to one of the other ones pending. Alabama, I think, was in sort of a similar situation. That, the litigation may have ended before ATF changed, reassessed the permit. But I think the vast majority of those 13 states- Do you remember who won the Alabama case? My memory, Your Honor, and it's a vague memory, so I don't want to say this is definitely true, is that ATF won that case on sort of grounds similar to the grounds of the district court went off on in this case. On standing? On standing grounds, yes. Like I said, that's a very vague memory. And so I don't want to that ATF reassessed, had no pending litigation tied to them, which, again, just, I think, underscores that this was not about trying to move pending litigation or sort of game the judicial system. It was about, I think, ATF conducting a good faith reassessment of a large number of regulations. And just, I mean, on the merits, agreeing with the plaintiffs about the Michigan concealed pistol license. And again, about sort of a number of other state licenses. I'm happy to address anything else that the court wants me to, but in the absence of- I don't think we have any other questions, Mr. Janda. Thank you very much for doing this. I don't know that you're even getting paid today, so thank you for doing this. We appreciate it. Thank you. Mr. Olson, I know you've got four minutes of rebuttal, so sorry to spring this on you. You probably were still in a taking notes mode, but you're free to collect your thoughts for a second if you want. Yeah, just one moment. Well, I'll just give you one thing to shoot at right away. My bad analogy, forgive me, didn't mean it. But he makes a pretty good point about 13 states and territories. And I realized he was saying vague recollection. My recollection's zero, so maybe you can let us know what's going on here. But if it's the case that only one or two of those was in litigation and there were changes made that affected 13 states and territories, that does seem to be evidence of it not being gamesmanship. Your Honor, I don't know the exact number. I know that-  I don't believe there were any cases in litigation. The Alabama case ended many years ago. I think that there were three. Most of them, if they were changed, were small tweaks. I don't believe they were complete reversals like this case where a permit qualifies and then doesn't qualify. I could be wrong, but that's my recollection. Well, maybe we'll just leave that alone. Well, I'm glad you let us know you weren't sure about that. That's fair. So a couple of points in response. Mr. Janda, one of the things that he said was, I don't think there's a basis for believing that ATF will re-offend. And I just wanted to make we don't have to have a basis. The burden is not on the plaintiffs here. The burden is on the government to show that there's a basis that they won't re-offend. And so I think I just wanted to be clear about that. The second point I wanted to address is that if this was three years in the future, there might be some new administrative record. And so there'd be a different legal challenge or something. I don't agree with that. I think the courts say that you don't have to have the precise historical facts. You don't have to have reissuance of the self same mandate. You just have to have substantially the same legal controversy. So whether it is a decision that was made by the Michigan State Police, whether it's some deputy attorney general for something, whether it's a local county clerk, whatever the basis is for the thing, if there's been no change in federal law, there's been no change in state law. And so if... But forgive me for interrupting. Another way of making that point is that there are two moving parts here as opposed to one. The typical person in your situation is saying, gee, all the head of this agency has to do is change their mind. That by itself brings the case back to us. That's not quite true here, right? Because this also would turn on what Michigan did. And so that seems to be two moving parts and therefore two sets of reasons why the new manifestation of the dispute would be materially different. But it would be the same underlying legal claim. At the nice level of generality for you, yes. But that's very high up the perch of generality. This court would still be required to determine the meaning of federal law, would still be to determine the meaning of state law, and to apply those to one another and see whether the Michigan permit fits. And that's what we've been asking. What's your best case for the idea that it's okay that the next manifestation of the case will be materially different? What's your best case for that? I think I'd push back and say, I don't know that it would be materially different. I'll give you a hypothetical. Okay, well, you can go on. But if you have a case along those lines, that's what I understood one of your arguments to be. I just wanted to see if there was one you really thought was worth looking at. But I don't want to play a game here where I'm testing your memory. That's not what I mean to do. Well, those, I don't remember the particular cases that used that language, but that the self-same mandate language, the precise historical facts, and the same legal controversy, I think those are all cited somewhere in our brief. I forget if we're not having that. No, that's fine. That's fine. We'll look at it. The last thing, Mr. Janda said can't represent what ATF is going to do forever and ever. And I think there's a quote from Speech First that really drives this home where the Supreme Court says it's defendant's burden to establish that it cannot reasonably be expected to resume its challenge conduct, whether the suit happens to be new or long lingering, and whether the challenge conduct might occur immediately or at some more precipitous moment in the future. And if we have a future administration, they decide they want to have more background checks for whatever reason, lest we forget, President Biden signed an executive order, including directing the Attorney General to move as close to universal background checks as possible within existing law. And if that trickles down to ATF and they say, increase the number of background checks, ATF looks at this and they say, here's the low-hanging fruit. Let's just revoke all of these permits again. And we're right back to where we were. And with that, I will rest. Thank you, Mr. Olson. Thank you, Mr. Gendo. We appreciate both of your arguments and even more so your helpful and excellent briefs. Thank you very much. The case will be submitted.